53 CCPA

**Application of Philip M. CARABATEAS.**
**Patent Appeal No. 7476.**

United States Court of Customs
and Patent Appeals.
March 24, 1966.
Rehearing Denied May 5, 1966.

Laurence & Laurence, Washington, D. C. (Dean Laurence, Herbert I. Sherman, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (J. E. Armore, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of claims 1 and 2 in appellant's patent application [1] for "4-aryl-4 - (lower acyloxy)-1-(3-aryl-3-hydroxypropyl)-piperidines and their preparation." Appellant has withdrawn appeal of claim 2.

The appealed subject matter is represented by the chemical compound of claim 1:

1. 1 - (3-Hydroxy-3-phenylpropyl) - 4-phenyl-4-propionoxy-piperidine.

That compound has the structural formula

and is useful as an analgesic.

The references are:

| | | |
|---|---|---|
| Elpern II | 2,846,437 | August 5, 1958. |
| Elpern I | 2,850,500 | September 2, 1958. |
| Pohland II | 2,904,550 | September 15, 1959. |
| Pohland I | 2,951,080 | August 30, 1960. |
| Cutler et al. | 2,962,501 | November 29, 1960. |

The disclosure of those references was reviewed by this court in In re Carabateas, 345 F.2d 1013, 52 CCPA 1386, and need not be further detailed here beyond noting that Cutler and Pohland I disclose an analgesic of the structural formula

The examiner found appellant's piperidinol ester obvious from a consideration of the Cutler, Elpern and Pohland patents, employing reasoning similar to that used by the examiner in *Carabateas*.

Appellant contends that an affidavit showing the compound of claim 1 to be nineteen times more active as an analgesic than the "reverse ester" compound of Cutler and Pohland I when administered subcutaneously is persuasive evidence of unobviousness and patentability of the compound.[2] As reference to our decision in *Carabateas* will establish, we thought the Elpern patents collectively suggested that *piperidinol* esters having the structure of appellant's compounds

---

1. Serial No. 85,195, filed January 27, 1961.

2. That figure was established by a finding that appellant's compound and that of

Cutler were 3220 times and 173 times, respectively, more potent than meperidine, a well known analgesic, on a molar basis.

there claimed would possess greater analgesic activity, perhaps twice as great, than the "reverse esters" which Cutler obtained from the requisite piperidine *carboxylic acid*. We also referred to a Braenden publication in that record, not relied on by the examiner in his rejection, which showed that in changing from the carboxylate structure of meperidine (ring-$\overset{\text{O}}{\overset{\|}{\text{C}}}$-O-$C_2H_5$), to the "reverse" structure (ring-O-$\overset{\text{O}}{\overset{\|}{\text{C}}}$-$C_2H_5$), the substituent being in the 4-position of the ring, and the remainder of the molecule being kept the same, a five to ten-fold increase in analgesic activity is observed.[3]

We have re-examined the Elpern references on which heavy reliance was placed in our original *Carabateas* opinion.

While we are of the view that those references, together with Cutler, collectively establish obviousness of the structural formula and analgesic activity both of appellant's compounds claimed there and the present compound, we think we erroneously concluded in *Carabateas* that the Elpern patents would suggest to one of ordinary skill that *any improvement* in analgesic activity would necessarily inhere in compounds derived from piperidinol, ring-O-$\overset{\text{O}}{\overset{\|}{\text{C}}}$-$C_2H_5$, when compared to otherwise identical compounds of the carboxylate structure, ring-$\overset{\text{O}}{\overset{\|}{\text{C}}}$-O-$C_2H_5$.[4]

In the absence of a suggestion in the present record that the nature of appellant's improvement would be expected,

---

3. That appears consistent with the discussion in In re Lunsford, 327 F.2d 526, 51 CCPA 1000, wherein it was observed that the analgesic prodine, having the formula

is more potent than the analgesic meperidine, having the formula

the Braenden reference is not in the present record.

4. We said in *Carabateas*:

Referring to the Elpern patents, it will be seen that the Elpern II "1-(3-phenoxypropyl)-4-acetoxy-" compound, which has the same sort of ester structure as appellant's compounds, possesses *twice* the analgesic activity of the Elpern I ethyl (3-phenoxypropyl) piperidine-4-carboxylate. Compared with the Elpern I ethyl (2-phenoxy*ethyl*) piperidine-4-carboxylate and ethyl (4-phenoxy*butyl*) piperidine-4-carboxylate esters, this same Elpern II compound, albeit not the exact "reverse ester" but instead a homolog thereof, is, respectively, *four* and *eight times* more effective as an analgesic. We believe this amply suggests that esters having the structure of appellant's compounds will possess greater analgesic activity than their "reverse esters."

In drawing that conclusion, we assumed that the "4-acetoxy" compound of Elpern II was identical to (e. g. the exact "reverse ester") the *ethyl*-4-carboxylate compound of Elpern I but for reversal of the ester linkage. In fact it is not, as comparison of the respective structures (ring-O-$\overset{\|}{\text{C}}$-$CH_3$ vis a vis ring-$\overset{\|}{\text{C}}$-O-$C_2H_5$) demonstrates. We think such a comparison of ester homologues to be too tenuous to suggest that any improvement would be obtained solely because of reversal of the ester linkage. That comparison being the controlling evidence in *Carabateas*, we think the decision there rendered necessarily is incorrect.

we think appellant has presented clear and convincing evidence of the greater effectiveness of the claimed compound over the prior art, sufficient here to establish patentability of the compound. In re Lohr, 317 F.2d 338, 50 CCPA 1274. Under the circumstances, we think the record fails to support a finding that the subject matter as a whole would be obvious to one of ordinary skill in the art.

The decision of the board is reversed.

Reversed.

RICH, Judge (concurring).

I am satisfied this is a clear case for reversal, but for reasons other than those stated by the majority.

While I agree that the art of record collectively establishes obviousness of the structural formula and analgesic activity of the compound defined by the claim on appeal, I am unable to agree that a finding of *an* improvement in activity in esters of the type here involved, obtained from piperidinols, compared to those obtained from piperidine carboxylic acids, would be wholly *unexpected* to one of ordinary skill in the art with those references before him. To conclude otherwise, it seems to me, is to deny the realities of the situation; for the plain fact is that, without exception, the Elpern II compounds demonstrate potency greater than that possessed by the Elpern I compounds. While those compounds differ structurally in two respects, there is no reason to believe that either is *not* responsible, at least in part, for that increase in activity.

I would therefore reverse on what to me is a much sounder basis, both in law and on the facts presented, namely that the art makes no suggestion whatever that a reversal of the ester linkage would result in an increased activity *approximating the nineteen-fold increase found by appellant*. At the very best, the art suggests an increase of the order of four to eight times. This is a far cry from what appellant found.

The question is not, it seems to me, whether the art suggests *an* improvement, but rather whether it reasonably suggests *the particular* improvement relied upon for patentability in both its qualitative and quantitative sense. See In re Lunsford decided March 17, 1966, 357 F.2d 380, 53 CCPA ——. As in all section 103 cases, the important consideration is: does the prior art make obvious to those of ordinary skill what appellant has found?